**SIGNED THIS: June 25, 2008**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TODD R. PILCHER, | ) | No. 04-84924 |
|                  Debtor. | ) | |
| | ) | |
| | ) | |
| SUNRISE WINDOWS, LTD., | ) | |
|                  Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 05-8044 |
| | ) | |
| TODD R. PILCHER, | ) | |
|                  Defendant. | ) | |

### O P I N I O N

This matter is before the Court on the unopposed motion for summary judgment filed by Sunrise Windows, LTD. (SUNRISE), on its complaint against the Debtor, Todd R. Pilcher (DEBTOR), seeking a denial of discharge under Sections 727(a)(2) and (a)(5).

From 2001 through November, 2003, the DEBTOR was engaged in the business of providing home repair services to business and residential consumers, including the

installation of siding and the replacement of windows, doing business as Pilcher Window and Siding Company.[1]  The DEBTOR purchased windows from SUNRISE, one of four suppliers, on credit.

At some point in 2003, the DEBTOR'S spouse, Donna Pilcher (DONNA), filed for a dissolution of marriage.  As customary, the DEBTOR submitted a financial affidavit in that proceeding.  On November 4, 2003, an order was entered in that proceeding which transferred all of the business assets and liabilities to DONNA.

The Illinois Attorney General brought an action against the DEBTOR and his company in the Circuit Court of Peoria County, Illinois, alleging that in the course of his business operations he had violated Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act by, *inter alia*, accepting payments from consumers upon contracts to provide services but failing to commence or complete the work and by failing to refund consumers' deposits or payments, despite not commencing or completing the contracts.  815 ILCS 505/2.  By that action, the Attorney General sought to enjoin the DEBTOR from engaging in the home repair business, to recover restitution damages on behalf of sixty-three named individuals, and to impose civil penalties.

On November 3, 2004, the DEBTOR, represented by an attorney, filed a Chapter 7 petition.  Unsecured claims listed on Schedule F, including a debt to SUNRISE in the amount of $120,452.31, totaled $600,000.[2]  After the first meeting, the Chapter 7 trustee filed

---

[1] In early February, 2002, the DEBTOR incorporated the business and continued to operate under that entity until the corporation was dissolved in July, 2003.

[2] Schedule F was later amended to add numerous individuals, the amounts of whose claims were shown as unknown.

a no asset report. SUNRISE conducted a Rule 2004 exam of the DEBTOR on February 1, 2005. The Attorney General was granted relief from the stay to proceed in state court on its complaint against the DEBTOR for violations of the Consumer Fraud Act, in order to permit the state court to enter final judgment.

SUNRISE filed a four-count complaint, seeking a determination that its debt was nondischargeable under Sections 523(a)(2)(A) and (a)(6) and to deny the DEBTOR'S discharge pursuant to Sections 727(a)(2) and (a)(5), on the grounds that he transferred, removed or concealed property with the intent to hinder, delay or defraud creditors, within the year prior to the filing of the petition. Specifically, in Count I, brought pursuant to Section 727(a)(2), SUNRISE contends that discharge should be denied based upon the transfer to DONNA in the dissolution proceeding. Count II, brought under Section 727(a)(5), is premised upon the DEBTOR'S failure to satisfactorily explain the disappearance of the business assets. In Counts III and IV, which are not presently before the Court, SUNRISE seeks a determination that its debt is nondischargeable for fraud and for conversion.

The DEBTOR filed an answer to the complaint, denying the allegations. The initial pretrial conference was held on June 28, 2005. The joint pretrial statement filed by the parties identified numerous issues of fact. After several scheduled pretrial hearings, the case was set for trial on May 22, 2007. One week prior to trial, the parties filed a joint motion to continue the trial date, having become aware that the DEBTOR had recently moved from Kentucky to West Virginia and obtained a new job. Neither SUNRISE nor the DEBTOR'S attorney knew of the DEBTOR'S address and a continuance of ninety days was

sought in order to enable the DEBTOR to make arrangements with his new employer for leave to attend the trial. At the next hearing, in July, 2007, the DEBTOR'S attorney advised the Court that he had a number for the DEBTOR'S cell phone and SUNRISE proposed to notice up a telephone deposition, which could be used as an evidentiary deposition if the DEBTOR failed to appear for trial. When the DEBTOR'S attorney discovered that the phone number he had for the DEBTOR had been disconnected, he filed a motion to withdraw. SUNRISE had no objection to the motion and the DEBTOR'S attorney was permitted to withdraw. At a continued hearing in November, 2007, SUNRISE indicated that it had a new lead on the DEBTOR'S whereabouts. That lead failed to pan out and SUNRISE advised the Court that it intended to file a motion for summary judgment.

SUNRISE filed a partial motion for summary judgment, seeking judgment on Counts I and II of the complaint objecting to the DEBTOR'S discharge. In support of its motion, SUNRISE submitted a portion of the transcript of the earlier Rule 2004 exam of the DEBTOR. The motion was set for hearing and notice was mailed to the DEBTOR at all of the addresses contained in the court file.[3] The DEBTOR, now *pro se,* failed to respond to the motion for summary judgment and did not appear at the hearing held on April 14, 2008. The Court took the matter under advisement.

*ANALYSIS*

Under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and

---

[3] Two of the four notices sent to the DEBTOR, at addresses in Peoria and in Bartonville, were returned.

4

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment will be granted only where it is clear that there is no dispute about the facts or inferences to be drawn therefrom. *Central Nat. Life Ins. Co. v. Fidelity and Deposit Co. of Maryland*, 626 F.2d 537 (7th Cir. 1980). Inferences to be drawn from underlying facts must be viewed in the light most favorable to parties opposing the motion. *In re Chambers*, 348 F.3d 650 (7th Cir. 2003). It is not the role of the trial court to weigh the evidence or to determine its credibility, and the moving party cannot prevail if any essential element of its claim for relief requires trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant bears the burden to prove each fact material to its claim and to establish that each fact is not in genuine dispute. If the movant fails to make that showing, summary judgment is not proper and must be denied. *In re Rogstad*, 126 F.3d 1224, 1227-28 (9th Cir. 1997). Where no response is filed in opposition to a motion for summary judgment, the court should only enter judgment in favor of the moving party if it is appropriate. Fed.R.Civ.P. 56(e). The court must examine the evidentiary matter in support of the motion for summary judgment to determine the absence of a genuine issue and that the uncontested facts entitle the movant to relief as a matter of law. *Wienco, Inc. v. Katahn Associates, Inc.*, 965 F.2d 565 (7th Cir. 1992); *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241 (2nd Cir. 2004).

Denial of a debtor's discharge is considered to be a harsh and drastic penalty. *In re Lindemann*, 375 B.R. 450 (Bankr.N.D.Ill. 2007). Consistent with the goal underlying the

Bankruptcy Code of affording debtors a "fresh start," the grounds for denial of discharge listed in Section 727 are strictly construed in favor of the debtor. *Matter of Juzwiak*, 89 F.3d 424 (7th Cir. 1996). In exchange for the fresh start, however, debtors are required to present themselves accurately and truthfully before the court. *In re Hammitt*, 289 B.R. 670 (Bankr.C.D.Ill. 2001). An objector seeking denial of discharge bears the burden of proving each of the elements of the applicable claim by a preponderance of the evidence. *In re Scott*, 172 F.3d 959, 966-67 (7th Cir. 1999).

Section 727(a)(2)(A) provides that a court shall grant a debtor a discharge unless "the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property . . . has transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition." In order to prevail under this provision, a plaintiff must prove by a preponderance of the evidence that (1) the debtor; (2) transferred, removed, destroyed or concealed; (3) the debtor's property; (4) with actual intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property. *Village of San Jose v. McWilliams*, 284 F.3d 785 (7th Cir. 2002). Essentially, the exception consists of two components: an act, i.e., a transfer or a concealment of property, and an improper intent, i.e., a subjective intent to hinder, delay or defraud a creditor. *In re Kontrick*, 295 F.3d 724 (7th Cir. 2002). Because direct evidence of a fraudulent intent is rare, fraudulent intent may be inferred from the debtor's actions and may be proved by circumstantial evidence. *Matter of Yonikus*, 974 F.2d 901 (7th Cir. 1992). In determining whether a debtor has acted with intent to defraud, the debtor's "whole pattern of conduct" should be considered. *In re Lindemann*, 375 B.R. 450

6

(Bankr.N.D.Ill. 2007). Denial of discharge need not be premised on an intent to defraud, but also upon an intent to hinder or delay the objecting creditor or trustee. *In re Butler*, 377 B.R. 895 (Bankr.D.Utah 2006).

Section 727(a)(5) provides that a court shall grant a debtor a discharge unless "the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." Under Bankruptcy Rule 4005, the plaintiff has the burden of proof. The initial burden is on the plaintiff to establish that the debtor owned specified substantial and identifiable assets and that those assets are no longer available for creditors. *In re Martin*, 698 F.2d 883, 886 (7th Cir. 1983); *In re Hansen*, 325 B.R. 746 (Bankr.N.D.Ill. 2005). Once the plaintiff establishes a *prima facie* case, the burden of going forward shifts to the debtor to provide a satisfactory explanation for the unavailability of those assets. *Martin*, 698 F.2d at 886-87; *In re Tauber*, 349 B.R. 540 (Bankr.N.D.Ind. 2006). The determination of whether the debtor's explanation is "satisfactory" is left to the discretion of the court. *Baum v. Earl Millikin, Inc.*, 359 F.2d 811 (7th Cir. 1966). Unlike Section 727(a)(2), a claim under Section 727(a)(5) does not require a showing of fraudulent intent. *In re Mantra*, 314 B.R. 723 (Bankr.N.D.Ill. 2004).

SUNRISE'S motion for summary judgment on Count I of the complaint is premised upon the DEBTOR'S transfer of the business assets to DONNA in the dissolution proceeding, in November, 2003. Characterizing the transfer as "gratuitous," SUNRISE contends that a presumption arises that the transfer was made with fraudulent intent. SUNRISE relies on *In re Bateman*, 646 F.2d 1220 (8th Cir. 1981), decided under Section 14(c)(4) of the Bankruptcy Act, holding that when the debtor has gratuitously made a

7

transfer of valuable property to a family member, a presumption arises that the transfer was made with actual fraudulent intent necessary to result in denial of the discharge. *See Matter of Armstrong*, 931 F.2d 1233 (8th Cir. 1991) (applying presumption under Section 727(a)(2)). That principle of law is well established. *In re Diloreto*, 2006 WL 2974156 (E.D.Pa. 2006); *In re Meyer*, 307 B.R. 87 (Bankr.N.D.Ill. 2004); *In re Freitas*, 261 B.R. 556 (Bankr.D.Conn. 2001).

Yet that principle must be applied with caution. Section 727(a)(2), requiring proof of wrongful intent, is a "fraud in fact" statute, not a "fraud in law" statute. *See U.S. ex rel. Hartigan v. Alaska,* 661 F.Supp. 727 (N.D.Ill. 1987) (distinguishing fraud in fact from fraud in law). As such, mere proof that a transfer was made for no consideration that left the debtor insolvent, is ordinarily not sufficient, absent proof of an accompanying wrongful intent. And while a dissolution proceeding does not insulate a transfer from scrutiny as a fraudulent conveyance, *see id.*, it complicates the use of the presumption. A transfer of assets to one's spouse outside of a divorce context is readily susceptible to a presumption of fraudulent intent. But in the context of a divorce, the presumption, if it arises at all, is much weaker, since transfers are routinely made for non-fraudulent purposes such as in satisfaction of a maintenance or support obligation or as an equitable allocation of marital property.

Although a bankruptcy court may examine an inequitable distribution of property resulting from a judgment of dissolution of marriage in the context of a dischargeability proceeding where actual fraud is alleged, the objecting party must establish the sham nature of the divorce. *In re Rodgers*, 315 B.R. 522 (Bankr.D.N.D. 2004). SUNRISE has made

8

no showing that the parties' divorce was collusive or that the "agreed order" transferring the business to DONNA was a sham. That the parties came to an agreement effecting an uneven settlement, does not, of itself, amount to a collusion or a fraud upon creditors.[4] The order entered by the state court in the dissolution proceedings on November 4, 2003, is not a part of the record. In his deposition, submitted by SUNRISE, the DEBTOR refers to DONNA'S testimony in the dissolution proceedings in support of her position that the business should be granted to her and the DEBTOR himself acknowledges her business experience. The DEBTOR testified that he was "ordered out of the business" and was told not to have any more involvement with it. There is no evidence that he continued to have any involvement with the business after November 4, 2003.

Because the other terms of the property division are not part of the record, SUNRISE'S characterization of that transfer as "gratuitous" is unsubstantiated. Adding to the shortcomings of SUNRISE'S motion, is its contention that the transfer of the business was a transfer having value. There is no evidence that at the time of the transfer to DONNA the value of the business assets exceeded the amount of its liabilities. In fact, SUNRISE'S position is self-contradictory in this regard. SUNRISE alleges, in its complaint, that within days of the entry of the order transferring the business assets to her, DONNA sought to vacate the order, alleging that the business was in serious financial distress and that large sums of money were owed to unsatisfied customers, suppliers and labor contractors.[5]

---

[4] Under Illinois law, the terms of a marital settlement agreement providing for the disposition of property are binding upon the court unless the court finds the agreement to be unconscionable. 750 ILCS 5/502(b).

[5] SUNRISE makes no claim of retaining a security interest in the windows it sold to the DEBTOR. As an unsecured creditor, it would share pro rata in the liquidation value of any unencumbered assets only after priority and administrative claims were paid.

Accordingly, on the record before the Court, no presumption as to the DEBTOR'S intent arises. Issues of intent can rarely be resolved on summary judgment. *In re Chavin*, 150 F.3d 726 (7th Cir. 1998). In *Chavin*, the bankruptcy court granted the trustee's motion for summary judgment on his complaint to deny the debtor's discharge based on his false oaths and concealment, determining that, without any possibility of doubt, the debtor had made seventeen false material statements which evidenced a pattern of reckless disregard for the truth. Upholding the ruling of the district court affirming that decision, the Seventh Circuit applied the exception to the rule that summary judgment is inappropriate where intent is at issue – saved for extreme cases – where the proffered testimony is "utterly implausible in light of all relevant circumstances." *Id*. at 728. Finding the debtor's denial of an intent to defraud creditors or the trustee to fit that bill, the court stated:

> [The debtor] is a mature and experienced businessman who on the eve of bankruptcy had properties worth millions of dollars. The questions that he claims not to have understood were not esoteric, and his explanations for his failure to answer them correctly are ridiculous. Here are some examples. Though president and sole shareholder of a real estate management company suggestively named Chavin Enterprises, Inc., [the debtor] did not list his position as president or his stock ownership in response to questions about both office and stock ownership. He claimed that the stock was worthless, but of course that was for the creditors to decide; he offered no explanation for his failure to list his office. He failed to disclose a partnership interest in commercial real estate and tried to justify the failure by saying that the partnership had been dissolved a few weeks before the bankruptcy proceeding began; but in the face of his partner's sworn denial that it had dissolved that early, [the debtor] was unable to substantiate his claim. He failed to disclose a valuable stock option on the preposterous ground – one he could not, as an experienced businessman, have believed – that because the option was not assignable, it had no value. He failed to disclose some $1.6 million in income, explaining that he "was wondering when the paralegal would ask me about my other earnings." And so it goes. In none of these instances, or any of the others on the list of 17 (more than 40 false statements were alleged, but the bankruptcy judge generously determined that with respect to 23 there was a genuine issue of material fact concerning

> [the debtor's] state of mind), could a reasonable person believe [the debtor's] stated reason for his false representation or omission.

In fact, the court referred the case for possible prosecution for bankruptcy fraud and the debtor was later convicted of tax and bankruptcy fraud. *U.S. v. Chavin*, 316 F.3d 666 (7th Cir. 2002). In contrast to *Chavin*, this case cannot be characterized as "extreme" as the DEBTOR'S explanation at his Rule 2004 exam is entirely plausible and the issue of the DEBTOR'S intent cannot be resolved on summary judgment.

Moreover, drawing all inferences in favor of the DEBTOR, it must be inferred that the transfer of the business assets to DONNA was done for a legitimate, non-fraudulent reason – to fulfill his duty to comply with a court order. In fact, the DEBTOR'S deposition testimony fully supports that conclusion. There is no evidence in the record that the transfer was made by the DEBTOR with an actual intent to hinder, delay or defraud anyone.

The DEBTOR, in his deposition, voiced a suspicion that another window supplier, after the transfer to DONNA, repossessed a large amount of windows from the business. Nothing in the record indicates that SUNRISE pursued that rumor to see whether that supplier took possession of any windows. If that happened, it is difficult to see how the DEBTOR could be considered culpable. Based upon the nature of its questions to the DEBTOR at his deposition, it is apparent that SUNRISE suspects that the large inventory of windows went missing as a result of wrongful misappropriation. However, the record is devoid of any evidence of such conduct by anyone, including the DEBTOR. The evidence indicates that the windows were located on the business premises as of November 4, 2003, the day he was ordered to transfer the business, and all its assets, to

DONNA. If any windows disappeared thereafter, the logical inference that follows is that the disappearance is the responsibility of DONNA or another employee who had access to the premises.[6] Summary judgment on Count I must be denied.

The TRUSTEE also seeks summary judgment on Count II of the complaint, contending that the DEBTOR has failed to satisfactorily explain the missing inventory. In support of its motion, SUNRISE relies on the DEBTOR'S deposition testimony that on November 4, 2003, the date the business was transferred to DONNA, substantial inventory was located on the business premises and the business was operational. Based on the DEBTOR'S failure to explain what happened to the windows, both at the first meeting of creditors and later at his deposition, SUNRISE contends that the DEBTOR is precluded, as a matter of law, from offering any explanation at this stage of the proceeding.

SUNRISE'S claim under Section 727(a)(5), based upon the disappearance of the window inventory after the assets were transferred to DONNA, is legally insufficient. By court order, after the hearing on November 4, 2003, the business inventory was no longer property of the DEBTOR and he could not be held accountable after that time. The DEBTOR'S testimony, as noted above, was that he was ordered to have nothing more to do with the business. The lack of merit in this claim is sufficiently clear to warrant summary judgment in the DEBTOR'S favor, had he filed a cross motion.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###

---

[6] Any efforts by SUNRISE to obtain an explanation from DONNA or any other employee, are not part of the record before this Court.